## J. B. SWEET v. DR. C. M. CAPPS, et al.

Eastern Section. August 4, 1928.

Petition for Certiorari denied by Supreme Court, January 19, 1929.

Frank Montgomery, of Knoxville, for plaintiff in error.
W. T. Kennerly, of Knoxville, for defendant in error.

THOMPSON, J. The plaintiff below, J. B. Sweet, sued the defendant, Dr. C. M. Capps, for damages for personal injuries received

by being knocked out of a wagon in which he was riding by an automobile owned and driven by the defendant.

The case was tried in the lower court, before the court and a jury, but at the conclusion of all the testimony, the court instructed the jury to return a verdict in favor of the defendant upon the ground that there was no material evidence showing that the defendant was negligent. The plaintiff has appealed to this court, and has assigned errors challenging the action of the trial court in directing the verdict.

The plaintiff was a farmer residing in Claiborne county. At about nine or ten o'clock on the morning of July 26, 1925, the plaintiff was riding in a two horse wagon with his son-in-law who was driving. The plaintiff was sitting on the right side of the seat. They were returning to Claiborne county from a visit in Knoxville, and were going northwardly on the Maynardville Pike. They were going down a slight hill and the horses were walking. At the place of the accident the road makes an "S" curve. They were on their own right-hand side of the road and within a foot and a half of the slight bank on their side. And they were on the inside of the curve in the road.

Dr. Capps with his wife was driving his Ford sedan northwardly along said Maynardville Pike and came up behind the plaintiff. He was traveling at a speed of about ten miles per hour. There was another automobile approaching the plaintiff and Dr. Capps from the opposite direction. On account of this other automobile and on account of the curve in the road, Dr. Capps did not desire to attempt to pass the plaintiff or rather the wagon in which he was riding. So, when he reached a point from forty to seventy feet back of the wagon he put on his brakes in the ordinary and usual manner. When he did so the left rear axle of his car broke. Since the foot or service brake on his car operated on a drum on the drive shaft and not on the rear wheels, as on most cars, the result of the broken axle was that his foot or service brake failed entirely, and Dr. Capps found that he could not check his car with his foot brake. He put on his hand or emergency brake which does operate in a drum on the rear wheels but this brake would not hold.

It appears from the evidence that when one of the rear axles of a Ford breaks there is nothing to hold the axle and wheel (which are fastened together) in the housing and they work out. The result is that the drum on the wheels goes out from under or over the emergency brake and it will not hold on that wheel. Theoretically, if at the instant the axle breaks the emergency brake is put on tight enough to lock the wheel so that it cannot turn and work the drum out from under the brake, the emergency brake will hold. And it

appears that after one of the rear axles breaks the emergency brake on the other wheel will still catch. But the expert testimony is that if a rear axle on a Ford breaks there is not one in a hundred which has an emergency brake that will hold. They say that even the emergency brake on the wheel of the axle which does not break will not stop the car. And Dr. Capps and his wife both testified that he tried to use both brakes but that neither of them would hold or stop his car. Dr. Capps and his wife both testified that after the axle broke he could not steer the car. And in this they are corroborated by the expert witnesses.

Being unable to either stop or guide the car it ran into the wagon in which plaintiff was riding; that is, the right front head light of the Ford struck the rim of the left rear wheel of the wagon. The only damage to the Ford was the broken head light and there was no damage to the wagon. So, the blow must have been a very light one. But plaintiff testified that it knocked him out of the wagon onto the road and injured him. Although Dr. Capps testified that plaintiff jumped from the wagon, the testimony of the plaintiff, for the purpose of testing whether peremptory instruction should have been granted, is conclusive. We therefore accept it as true that the force of the blow knocked or jarred plaintiff out of the wagon.

Dr. Capps' car was about two years old and had been driven 3000 or 4000 miles. Prior to the breaking of the axle it was in good condition and the brakes, both service and emergency, were working properly. Also the steering apparatus was functioning properly. The rear axles were enclosed in a metal housing and could not be seen, and the experts testified that there was no way that Dr. Capps could have foreseen or suspected that there was danger of an axle breaking.

The car had been made by the Ford Motor Company, one of the largest makers of automobiles, and had been purchased through a reputable Ford dealer or sales agency. So, we think there is no evidence upon which it could be held that Dr. Capps was negligent in not discovering the defective condition of the axle which broke.

Dr. Capps testified in substance that from the time the axle broke until his car struck the wagon, he was working frantically with the brakes and was trying his best to steer, and that he did not have time or opportunity to blow his horn. That he was in a very serious emergency cannot be questioned. The road was not wide; a wagon was in front of him; another car was approaching from the opposite direction; there was a bank on his right-hand side of the road and a ditch on his left-hand side; the road was down grade and on a reverse or "S" curve; and he could neither stop his car nor steer it. His testimony that with his frantic efforts to brake and steer his car under these circumstances he had no time or opportunity to blow his horn

is not at all unreasonable. Neither do we think that under the circumstances he was negligent in not calling out (by voice) a warning of his approach. He was not asked why he did not call out a warning, and the record does not show whether it could have been heard by the plaintiff had he done so. The record does not show whether the windshield of his car was open so that his voice would have carried. The horses and wagon must have been making some noise. And the right wheels of the wagon were within a foot and a half of the bank on the right-hand side of the road anyway.

Since we are of the opinion that he was not negligent in failing to blow his horn, we do not think we would be justified in holding that the plaintiff was entitled to go to the jury merely upon the suggestion that Dr. Capps might have called out a warning by voice.

Plaintiff points out that at one point in his testimony Dr. Capps estimated the speed of his car at ten miles per hour and the speed of the wagon at eight. Plaintiff then deduces that Dr. Capps was gaining on the plaintiff at the rate of two miles per hour. Plaintiff then reasons as follows:

"At this rate he (Dr. Capps) would have closed up the distance of seventy feet between them in 23.8 seconds, because he was going at the rate of 2.93 feet per second. Going at the rate of ten miles per hour he traveled forward five feet for every one foot of overhauling the plaintiff, so he traveled about 350 feet behind the plaintiff after his axle broke before he struck him."

We do not think the evidence justifies the conclusion that defendant traveled 350 feet behind the plaintiff after the axle broke and before he struck the wagon. Plaintiff and his son-in-law both testified that the horses were walking, and defendant testified that he was traveling about ten miles per hour at the time the axle broke. The testimony of the defendant and his wife is that the car was from forty to seventy feet behind the wagon at the time the axle broke. Bearing in mind the fact that the road was down hill, we do not think the evidence justifies the conclusion that the car ran over seventy feet after the axle broke, and the natural inference, even without testimony, is that it picked up speed as it ran.

In our opinion there was no evidence of negligence upon the part of the defendant which necessitated the submission of the case to the jury.

The judgment of the trial court will, therefore, be affirmed, with costs.

All concur.